[No. 5457.]
[No. 3127 C. A.]

## WATSON v. THE MANITOU AND PIKES PEAK RAILWAY COMPANY ET AL.

1. **Damages—Negligence—Dangerous Premises—Duty to Licensee—Contributory Negligence.**

Defendant company operated a railroad to the summit of Pike's Peak, and leased certain buildings to its co-defendant for a hotel, for 25 per cent. of the gross receipts. The hotel was higher than the station platform, and a retaining wall protected the platform from loose stones which might roll down the side of the mountain. The wall was ascended by a flight of steps, and the buildings were located 16 feet from the top thereof. Plaintiff walked up the mountain and ascended the stairs, arriving at the hotel at about 10 o'clock p. m., and, after being informed that the beds were all full, by an arrangement with an employee he obtained the latter's bed. Later in the night he went out of doors to answer a call of nature, and, not keeping within the light reflection from the house, stepped off the retaining wall and was injured. Held, that plaintiff had actual knowledge that the descent was abrupt, and, in any event, he was not a guest of the railroad company, but at most was a mere licensee to whom the company owed no duty to give notice of hidden dangers; and plaintiff, having reached the hotel by means of the steps over the retaining wall, and knowing that he was upon the top of a mountain more or less precipitous, was charged with knowledge of the nature of the surface of the ground surrounding the hotel, and was himself negligent in walking as he did.—P. 141.

2. **Practice in Civil Actions—Nonsuit—When Transferable.**

The court properly directed nonsuit, where it would have been compelled to set aside a verdict in favor of plaintiff if one had been returned.—P. 146.

3. **Appellate Practice — Abstract — Documents Not Included — Not Considered on Appeal.**

Where copies of advertisements offered in evidence and excluded were not preserved in the abstract, their materiality cannot be determined on appeal.—P. 146.

*Appeal from the District Court of El Paso County.*
*Hon. Louis W. Cunningham, Judge.*

Action by Phillip J. Watson against The Man-
itou & Pikes Peak Railway Company, a corporation,
and J. O. Hiestand.  From a judgment in favor of
defendants, plaintiff appeals.        *Affirmed.*

Mr. WALTER SCOTT, for appellant.

No appearance for appellees.

Mr. JUSTICE BAILEY delivered the opinion of the
court:

The defendant corporation was the owner of and
operated a railroad extending from the city of Man-
itou to the summit of Pike's Peak and was also
the owner of certain buildings upon the summit of
the peak.  These buildings were leased to the de-
fendant Hiestand, who used them for the purpose of
maintaining a hotel and curio store.  The rental
paid by Hiestand to the corporation was twenty-five
per cent. of the gross receipts.  Aside from the
amount of rents received, it does not appear that
the corporation had any interest in the business of
the hotel and curio store or that it had any voice in
the management of same.

It appears that at the stopping place of the
trains operated by defendant corporation there was
a platform.  The hotel was upon an elevation con-
siderably higher than this platform.  The ground
was rough and broken and covered with loose and
irregular masses of stone.  A retaining wall had
been constructed, evidently for the purpose of pre-
venting the rock from rolling down upon the plat-
form or the railroad track.  Steps were made ascend-
ing this retaining wall, by which passengers from

defendant corporation's trains could reach the buildings. From the top of the steps to the buildings was a distance of sixteen feet.

Upon the second day of July, 1902, the plaintiff walked from Manitou to the summit of Pike's Peak, reaching the latter place about ten o'clock at night. He applied to the parties in charge of the hotel for a place to sleep, but was informed that the beds were all full and that he could not be accommodated. After some conversation one of the employees of Hiestand at the hotel informed plaintiff that he might have the employee's bed, upon payment of two dollars. This offer was accepted and plaintiff retired. After he had been in bed for some time, he concluded that he would be unable to sleep because he had become chilled and could not get warm in bed, and for the further reason that he was annoyed by the presence of two other men who occupied a bed in the same room. Plaintiff finally arose and went into another room where there was a fire and in which one of the employees of Hiestand was at work. After plaintiff had been sitting by the fire for something like an hour he desired to urinate and was informed by this employee that there was no urinal in the house and it would be necessary for him to go outside, which he did. The light in the house was so placed that the reflection from it extended from the door some distance outside. Notwithstanding that it was dark, plaintiff did not keep within the line of the light but went diagonally away from it for a distance of about thirty-five feet at which point he stepped off the retaining wall, fell a distance of three or four feet and was injured. He then brought this action against the defendants to recover damages because of his injury.

At the close of the plaintiff's testimony and on the application of defendants, the court ordered a

nonsuit, for the reason that the evidence failed to disclose that the defendants were guilty of negligence, and that it did disclose that plaintiff was guilty of contributory negligence; from which judgment the plaintiff appealed.

Plaintiff in his brief says:

"At the conclusion of the trial counsel for plaintiff stated to the court that he did not intend to press the liability of the defendant Hiestand, because the testimony showed that the accident occurred at a point which Hiestand did not lease from defendant railway company and over which he had no oversight or control."

So that the only question presented to us is as to whether or not the facts present a cause of action against the railway company. The contention of the plaintiff as to the liability of the company is based upon the doctrine as announced by the supreme court of the United States in *Bennett v. Railroad Co.*, 102 U. S. 577, the syllabus of which is as follows:

"The owner or occupant of land who induces others to come upon it for a lawful purpose is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and he negligently suffered it to exist, without giving timely notice thereof to them or the public."

Under no possible view of this case can it be said that plaintiff climbed to the top of Pike's Peak upon the invitation of the defendant company. He was not a passenger, neither did he contemplate becoming one. He visited this place for his own pleasure and gratification and not for the profit or pleasure of the company. Plaintiff insists that the company did receive profit out of his visit, because, under the terms of the lease it would be entitled to fifty cents

of the two dollars paid by the plaintiff to the employee of defendant Hiestand for the use of the employee's bed. There is no proof as to whether that two dollars was retained by the party who gave up his bed or whether it went into the hands of the hotelkeeper. In any event, the fact that the railroad company was the lessor of the premises would not tend to make it liable. There is nothing to show that the railroad company was negligent in the maintenance of its grounds, unless it might be said that it should have placed a railing around the retaining wall, or had permanent lights fixed there so that the wayfarer who sought to wander about on the peak during the midnight hours might not suffer injury.

A railroad company may not be made to respond in damages to every person who may chance to be injured upon its grounds.

"One who goes to the station house of a railroad company, not for the purpose of any business, or to meet expected friends, or to see others depart, but as a mere spectator, for his own pleasure and convenience, is there at his own risk and peril, and cannot recover damages for personal injuries received in consequence of a defective platform or station grounds."—Fetters on Carriers of Passengers, § 239; *Poling v. Railroad Co.*, 38 W. Va. 645; *Pittsburgh, Ft. W. & C. Ry. Co. v. Bingham,* 29 Ohio St. 364; *Burbank v. Railroad Co.,* 42 La. Ann. 1156, and other authorities cited in the foregoing.

The case of *Gillis v. Pa. Railroad Co.*, 59 Pa. St. 129, was one in which a large number of people met at the station house on the occasion of the visit of Andrew Johnson, president. Because of the great weight upon it, the platform broke and the plaintiff was injured. He brought the action to recover for damages suffered on account of the injury. At the close of the testimony the court instructed the jury

to return a verdict for the defendant, which was done. Upon appeal Sharswood, J., said:

"It is  *  *  *  well settled that the owner of property is not liable to a trespasser, or to one who is on it by mere permission or sufferance, for negligence of himself or servants, or for that which would be a nuisance if it were in a public street or common, where all persons had a legal right to be without question as to their purpose of business."

See, also, *Woolwine's Admr. v. Railway Co.*, 36 W. Va. 329.

The case of *Bennett v. Railroad Company, supra,* so much relied upon by appellant, practically announces the same doctrine. At page 584 thereof it is said:

"It cannot be pretended that Bennett, at the time he was injured, was, in any sense, a trespasser upon the premises of the company. Nor is this case like many, cited in the books, one of mere passive acquiescence by the owner in the use of his premises by others. Nor is it a case of mere license or permission by the owner, without circumstances showing an invitation extended, or an inducement, or, in the language of some of the cases, an allurement, held out to him as one of the general public. It is sometimes difficult to determine whether the circumstances make a case of invitation in the technical sense of that word, as used in a large number of adjudged cases, or only a case of mere license. 'The principle,' says Mr. Campbell, in his treatise on Negligence, 'appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mutual pleasure or benefit of the person using it.' "

Appellant complains because the defendant company did not warn him of the existence of the re-

taining wall and of the danger incident to walking around the premises after dark. Plaintiff arrived upon the premises during the night and ascended the stairs which reached from the platform to the ground upon which the building was situate, so he had actual knowledge ·that the platform was much lower than the building and that the descent was abrupt, but, in any event, he was not there as the guest of the defendant company. He was not a passenger and had no business with the company. At most he was there as a licensee and in such cases it is not the duty of the licensor to give notice of hidden dangers.

"It is said that the licensor owes a duty to his licensee to give him notice of hidden dangers or traps. Expressions to this effect are found in some of the decided cases, but we think they do not accurately state the law. * * * It may be that if the licensor makes the premises more dangerous after the license is granted, in such a way that the increased danger is not open to observation it is his duty to notify the licensee, but we do not believe that he is bound to notify him of ordinary dangers incident to the condition and use of the premises at the time the license was granted."—Elliott on Railroads, § 1250.

"We have endeavored to show in the preceding section that there is, ordinarily, no duty to a licensee except to refrain from willful or wanton injury to him and to use reasonable care to prevent injury to him after discovering his danger. If there is no duty to the plaintiff or no violation of such duty there is, of course, no liability."—*Ibid.*, § 1251.

As touching upon the contributory negligence of the plaintiff, the case of *Reed v. Axtell & Myers, Receivers,* 84 Va. 231, is instructive. It appears that the plaintiff was a passenger who desired to go to Bremo. Upon being informed that the train did not

stop there, she concluded to stay at Scottsville and take the next train which would pass through the latter place between daybreak and sunrise. She was shown into the depot and inquiry was made whether she desired to go to a hotel. She stated that she preferred to spend the remainder of the night at the station. She inquired whether there was a ladies' toilet room in the building and upon being informed that there was not, went out on the platform, which was not lighted, and walked to the end of it in the dark where she fell to the ground, a distance of several feet. So much of the platform as was immediately in front of the waiting room was lighted by the light in the room. Without taking the precaution to inquire or ascertain whether or not she could safely do so, she turned at right angles upon stepping upon the platform from the lighted waiting room, walked off and was injured. At the trial she obtained a verdict at the hands of the jury which was set aside by the court and the action of the court in so doing was sustained, the appellate court saying that, all the circumstances considered, she was not only negligent but reckless, which clearly defeated her right of recovery.

So in this particular case, where the plaintiff knew that in one direction from the building there was a flight of steps within sixteen feet by means of which the retaining wall was ascended; knew that he was upon the top of a mountain, the sides of which were more or less precipitous, and, not having made any inquiry of parties present concerning the conditions surrounding the building, voluntarily left the portion of the ground which was lighted by the reflection of the lamp and walked a distance of some thirty or thirty-five feet in the dark, as he says, hastily: it would seem that the thing he might reasonably have expected was to fall over a precipice.

The judgment of nonsuit was properly rendered. The defendant company violated none of the obligations which it owed to the plaintiff, whether he was a mere trespasser or a licensee and, taking the course he did without making inquiry as to the surrounding conditions, he was reckless concerning his own safety. If the matter had been submitted to a jury and that body had rendered a verdict in favor of the plaintiff, it would have been necessary to have set it aside.—*Snyder v. Colo. Springs & C. R. R. Co.* 36 Colo. 288; *Chivington v. Colo. Springs,* 9 Colo. 597; *Woolwine's Admr. v. Ches. & O. R. R., supra; Randell v. R. R. Co.,* 109 U. S. 478.

It appears from the abstract that before ascending the peak plaintiff had read a certain advertisement, a copy of which was handed him. He was asked to state what the advertisement contained and the question was objected to as being immaterial. Plaintiff was also inquired of concerning the contents of certain other advertisements and objections to the admission of same were sustained. The action of the court in this behalf was assigned as error. Copies of these advertisements have not been preserved in the abstract and consequently we are unable to determine whether they were material or not.

Perceiving no reversible error in the proceedings below, the judgment will be affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.